CHRISTOPHER W. KENNERLY (SB# 255932)
chriskennerly@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Ave.
Palo Alto, CA 94304-1106
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

JEFFREY D. COMEAU (SB# 259679)
jeffreycomeau@paulhastings.com
PAUL HASTINGS LLP
4747 Executive Drive
Twelfth Floor
San Diego, CA 92121-3114
Telephone: (858) 458-3000
Facsimile: (858) 458-3005

Attorneys for Defendant
AT&T MOBILITY LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC,<br><br>Plaintiff,<br><br>vs.<br><br>HTC CORPORATION, et al.,<br><br>Defendants. | CASE NO. _____<br><br>PENDING IN UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS<br><br>CASE NO. 6:13-CV-00507-KNM (CONSOLIDATED LEAD CASE)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AT&T MOBILITY LLC'S MOTION TO COMPEL ACACIA TO PRODUCE PATENT LICENSE AGREEMENTS AND RELATED DOCUMENTS**<br><br>Date:<br>Time:<br>Dept.: |

**FILED UNDER SEAL**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................... 1

II. Factual and procedural background ........................................................ 1

    A. Plaintiff CCE and Its Parent Acacia ................................................ 1

    B. History of the Asserted Patents ........................................................ 2

    C. CCE and Acacia's Failure To Obtain and Produce Relevant Nokia Documents ........................................................................... 3

    D. Acacia's Refusal to Produce Relevant Acacia Portfolio Licenses and License Negotiation Documents ............................................. 5

III. LEGAL STANDARD ............................................................................... 5

    A. Scope of Discovery ......................................................................... 5

    B. Rule 45 Requires That AT&T File its Motion With This Court .......... 6

IV. ARGUMENT ............................................................................................. 7

    A. Acacia is Not a Disinterested Third Party ....................................... 7

    B. Acacia Has Possession, Custody, and Control of the Requested Nokia/NSN Documents Held by Nokia Documents ....................... 9

    C. Acacia Must Produce All Relevant Acacia License Agreements and Related Documents ................................................................. 10

V. CONCLUSION ......................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afros, S.P.A v. Krauss-Maffei Corp.*,
 113 F.R.D. 127 (D. Del. 1986) .......................................................................... 8, 9

*Bush v. Ruth's Chris Steak House, Inc.*,
 No. 10-1721 (BJR), 2012 WL 2236608 (D.D.C. June 18, 2012) ......................... 8

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
 318 F. Supp. 1116 (S.D.N.Y. 1970) .................................................................... 11

*Herbert v. Lando*,
 441 U.S. 153 (1979) ............................................................................................. 6

*In re MSTG, Inc.*,
 675 F.3d 1337 (Fed. Cir. 2012) .......................................................................... 12

*ResQNet.com, Inc. v. Lansa, Inc.*,
 594 F.3d 860 (Fed. Cir. 2010) ............................................................................ 10

*Schaaf v. SmithKline Beecham Corp.*,
 233 F.R.D. 451 (E.D.N.C. 2005) .......................................................................... 6

*VirnetX, Inc. v. Microsoft Corp.*,
 No. 6:07 CV 80, 2008 U.S. Dist. LEXIS 94854 (E.D. Tex. June 3,
 2008) (Davis, C.J.) ................................................................................................ 8

*Whitlow v. Martin*,
 263 F.R.D. 507 (C.D. Ill. 2009) ............................................................................ 6

**Other Authorities**

Fed. R. Civ. P. 26 ........................................................................................................ 5

Fed. R. Civ. P. 34 ........................................................................................................ 8

Fed. R. Civ. P. 45 ................................................................................................ 6, 7, 8

L.R. 26 ........................................................................................................................ 8

P.R. 3-2 ....................................................................................................................... 8

## I. INTRODUCTION

Acacia Research Corporation ("ARC") and its shell subsidiary, Cellular Communications Equipment LLC ("CCE"), have repeatedly frustrated AT&T's attempts to obtain discovery that was promised more than 18 months ago in a patent litigation matter pending in the Eastern District of Texas. Rather than provide this basic discovery, CCE and ARC have played the "blame game," pretending they are not one and the same and pointing fingers at each other or "third parties" Nokia Corp. and Nokia Siemens Network, from which the Asserted Patents originated. ARC has refused to produce a single document in response to a subpoena from AT&T. Accordingly, AT&T brings this motion to compel ARC to comply with its long-overdue discovery obligations and produce the documents in question.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff CCE sued AT&T and other defendants asserting patent infringement claims in a series of complaints filed in the Eastern District of Texas beginning on June 25, 2013. Ex. 1. This motion seeks compliance with a subpoena issued to CCE's parent company, ARC, which is headquartered in Southern California.

### A. Plaintiff CCE and Its Parent Acacia

Plaintiff CCE is a shell company set up by Acacia, a well-known patent assertion entity. In particular, CCE is a subsidiary of Acacia Research Group LLC ("ARG"), which is a subsidiary of ARC (collectively, "Acacia"). *See* Ex. 2. CCE's Initial Disclosures confirm that only Acacia personnel (Matthew Vella, Curtis Dodd, Marc Booth, and Christian Dubuc) are "knowledgeable regarding CCE's corporate matters, including the licensing of the patents-in-suit." Ex. 3 at 3; Ex. 4. Consistent with Acacia's litigation practice, Acacia created CCE shortly before the present litigation was filed and assigned Acacia's rights in the patents to the newly-created CCE entity. Ex. 5; Exs. 6-7. The CCE cases are currently set for trial in July 2016 and discovery is set to close on February 18, 2016. Ex. 8, Ex. 9 at 36:5-10.

**B. History of the Asserted Patents**[1]

The original assignees of the Asserted Patents were Nokia Siemens Networks Oy and Nokia Corporation ("Nokia Corp."). *See* Exs. 10 - 12. █████

█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████
███████████████████████████████
██████████████████████
████████
████████████████████████
█████████████████████████████████
█████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
██████████████████████████ █████████████
██████████████████████

---

[1] The "Asserted Patents" are currently U.S. Patent Nos. 7,218,923, 7,941,174 and 8,055,820. Proceedings with respect to U.S. Patent No. 7,941,174 have been stayed pending resolution of inter partes review proceedings. Ex. 14.

[2] ████████████████████████████████████████████
████████████████████████████████

1  █████████████████████████████████

2 █████████████████████████████████

3 █████

### C.  CCE and Acacia's Failure To Obtain and Produce Relevant Nokia Documents

On February 26, 2014, the Court held a Special Case Management Conference in the Eastern District of Texas. Ex. 15. During this conference, CCE represented to the Court that NSN had relevant license agreements and CCE would work diligently to obtain the agreements and provide them to defendants:

> Nokia Siemens is the original assignee on this portfolio. And my client has acquired that patent portfolio from Nokia Siemens. There are agreements that cover these patents, and I have not been able to lay eyes on them because Nokia Siemens will not give them to me, absent a subpoena. As soon as we have a schedule entered and I have the ability, and I have told the defendants this -- I can send a subpoena to Nokia Siemens so that they have sort of a legal process by which they need to give me those agreements, and then I can disclose them to the other side. Okay. That shouldn't take too long, should it? I would certainly hope not. But, you know, I will -- I stand here representing to Your Honor that I will work as diligently as possible to get the subpoena served, get the agreements. They may have some modest time period that they think they need to endure under the confidentiality clauses or some notice that they need to give before they give it to me, but my absolute intent is to give them those particular license agreements.

*Id.* at 21:18-22:14.

Under the governing Docket Control Order, the deadline for CCE to produce relevant license agreements to Defendants was May 16, 2014. Ex. 16 at 8. CCE made a meager production, which contained improperly-redacted agreements relating to NSN, Nokia Corp., and Siemens; CCE did not produce the promised

-3-

1  NSN licenses. Ex. 17. In response to inquiry from AT&T, CCE represented on
2  July 9, 2014 that it "was working to obtain Licenses from NSN" and "[p]art of the
3  hang-up has been receiving permission from Nokia Corp[.] for NSN to release
4  Licenses to CCE." Ex. 18. CCE further represented that it did not have complete
5  versions of the redacted agreements it had produced. *Id.*

6  Subsequently, more than seven months after the conference with the Court,
7  CCE filed a motion for issuance of letters rogatory to request license agreements
8  from Nokia Corp. Ex. 19. On February 5, 2015, CCE advised Defendants that
9  Nokia Corp. had refused to produce a number of documents requested by CCE.
10 Ex. 20. In particular, Nokia Corp. supposedly refused to produce the following:

11 • Unspecified licenses to the Asserted Patents involving Nokia Corp., Siemens
12   and/or NSN;
13 • Complete and unredacted copies of the redacted agreements relating to NSN,
14   Nokia Corp., and Siemens; and
15 • ███████████████████████████████████████

16 *Id.*; *see also* Ex. 21. CCE accepted Nokia Corp.'s refusal and made no further
17 effort to obtain these documents from Nokia Corp. *Id.* Similarly, CCE has not
18 produced Nokia Corp. or NSN's employment agreements with the inventors, which
19 presumably contain the terms of their obligations to assign the rights to the alleged
20 inventions.

21 In a further effort to obtain this discovery, AT&T issued the present
22 subpoena directly to Acacia on April 9, 2015 at its Newport Beach headquarters
23 due to Acacia's contractual relationship with NSN under the Patent Purchase
24 Agreement. Ex. 22. ████████████████████
25 ███████████████████████████████████████
26 ████████████████████████████    ███████
27 Nevertheless, with respect to the discovery that AT&T has requested, Acacia has
28

-4-

1  likewise failed to produce the requested licenses or inventor agreements, or make
2  any effort to obtain them from NSN or Nokia Corp. Ex. 23.

### D. Acacia's Refusal to Produce Relevant Acacia Portfolio Licenses and License Negotiation Documents

At the February 26, 2014 Special CMC with the Court in the Eastern District of Texas, CCE represented that it did not have the right to any agreements possessed by its Acacia parents:

> And I don't even have the right to give them to you. You have to respect the corporate forum [*sic*, form]. And I cannot go upstream and say I am giving you whatever license agreements, you know, Acacia has.

Ex. 15 at 24:5-8.

[redacted]

## III. LEGAL STANDARD

### A. Scope of Discovery

Rule 26 of the Federal Rules of Civil Procedure provides that the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This Rule further provides, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id*. Relevant information need not be admissible to be discoverable if the material "appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. "[T]he deposition-discovery rules are to be accorded a broad and

liberal treatment to effect their purpose of adequately informing the litigants in civil trials." *Herbert v. Lando*, 441 U.S. 153, 177 (1979).

Third parties may be subpoenaed to produce documents pursuant to Fed. R. Civ. P. 45. Rule 45 imposes a requirement upon the party or attorney issuing the subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Rule 45(d)(1). In conducting this analysis, "[n]on-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Whitlow v. Martin*, 263 F.R.D. 507, 512 (C.D. Ill. 2009). In *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005), the district court explained that "[i]n the context of evaluating subpoenas issued to third parties, a court 'will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.'" (citation omitted).

### B.     Rule 45 Requires That AT&T File its Motion With This Court

Although the underlying action is pending in the Eastern District of Texas, the procedure set forth in Rule 45 mandates that AT&T file its motion for compliance with this Court. Rule 45 was amended in 2013 to clarify and simplify the subpoena procedure. As amended in 2013, Rule 45 provides that "[a] subpoena must issue from the court where the action is pending," but "may be served at any place within the United States." Fed. R. Civ. P. 45(a)(2), (b)(2). Further, the subpoena may command "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). Acacia is located in Newport Beach, CA, so AT&T was obligated to specify a location for production of documents in either the Central or Southern District of California. AT&T elected to specify a location for compliance at its counsel's offices in San Diego. Ex. 22 at 1. Accordingly, AT&T must file its motion to compel compliance with this Court. *See* Fed. R. Civ. P. 45(d)(2)(B)(i)

("At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection."). However, "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). AT&T has no objection to this Court transferring the present motion to the Eastern District of Texas.

## IV. ARGUMENT

As discussed below, AT&T moves to compel production of highly relevant, wrongfully-withheld NSN/Nokia licenses and agreements with the inventors as well as Acacia licensing and settlement agreements potentially evidencing the value of the Asserted Patents, documents and correspondence related to the negotiations of such licensing and settlement agreements, and documents related to business evaluations of the Asserted Patents or similar technology.

### A. Acacia is Not a Disinterested Third Party

Acacia raises a number of objections to AT&T's subpoenas, claiming it is a disinterested third party. Ex. 29. This is demonstrably false. CCE is the alter ego of Acacia, and both try to hide behind the corporate structure to improperly withhold documents. CCE is a subsidiary of Acacia, and shares the same high-level executives. Other than CCE's status as a legally separate entity, there is no difference between the operators of Acacia and the operators of CCE. Nonetheless, CCE and Acacia each point fingers at the other in regard to their discovery obligations. As the Eastern District of Texas has held, such gamesmanship should not be tolerated:

> This Court adheres to a policy of liberal, open, and forthright discovery. The Court does not tolerate gamesmanship between litigants to shield or delay production of otherwise discoverable items. Nor will this Court allow a non-party with a substantial economic interest in the lawsuit and substantial control over either the plaintiff or

> the rights to the patent-in-suit to shield, delay production of, or defray the costs of producing items the plaintiff would be obligated to produce under Rule 26, the Local Rules, particularly L.R. 26 and P.R. 3-2, and the Discovery Order. Such an interested non-party may not use agreements or shell entities to obtain the benefit of this Court's liberal discovery policy while the interested non-party shelters under Rule 45, escalates an accused infringer's litigations costs, and withholds discoverable information.

*VirnetX, Inc. v. Microsoft Corp.*, No. 6:07 CV 80, 2008 U.S. Dist. LEXIS 94854, at *21–22 (E.D. Tex. June 3, 2008) (Davis, C.J.) (internal citations omitted).

In the same vein, Federal Rule of Civil Procedure 34(a) permits a party to request production of documents that are in the "responding party's possession, custody, or control." "Control does not require that the party have legal ownership or actual physical possession of the documents at issue, but rather the right, authority or practical ability to obtain the documents from a non-party to the action." *Bush v. Ruth's Chris Steak House, Inc.*, No. 10-1721 (BJR), 2012 WL 2236608, at *4 (D.D.C. June 18, 2012) (internal citations and quotation marks omitted). Courts look to several factors to determine whether a party has the "right, authority or practical ability" to obtain documents from a non-party, including: (1) "the corporate structure encompassing the different parties;" (2) "the non-party's connection to the transaction at issue;" and (3) "to what degree will the non-party receive the benefit of any award in the case." *Afros, S.P.A v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 130–31 (D. Del. 1986).

Considering each factor demonstrates that Acacia is not a disinterested third party, and should effectively stand in CCE's shoes for purposes of discovery obligations. First, the corporate executives overlap. Second, Acacia is highly connected to the patent purchase transactions at issue, as CCE's Initial Disclosures confirm. Exs. 3 - 4. Because CCE is a non-practicing entity whose sole function is the licensing and enforcement of patents acquired from NSN, these individuals—

who are top-level executives at Acacia —are necessarily knowledgeable about and involved in this litigation.  Third, Acacia is positioned to be the direct beneficiary of any award in this case.  Courts have uniformly held that direct beneficiaries of a particular case must participate in discovery.  "If a non-party will directly receive the benefit of an award, then it is unjust that it can frustrate the discovery process and the complete resolution of the issues by refusing to furnish documents in its possession."  *Afros, S.P.A.*, 113 F.R.D. at 131.  Any award attributed to CCE would flow directly to its parent Acacia, and Acacia routinely considers the revenues generated from its subsidiaries as part of its business operations.  *See* Ex. 30 at 3.

**B.  Acacia Has Possession, Custody, and Control of the Requested Nokia/NSN Documents Held by Nokia Documents**

[redacted]

They are in possession, custody, and control of the Nokia Corp./NSN documents and should have produced them long ago.  In particular, Acacia should be ordered to obtain and produce:

- All licenses to the Asserted Patents involving Nokia Corp., Siemens and/or NSN;
- Complete and unredacted copies of the redacted agreements relating to NSN, Nokia Corp., and Siemens;
- [redacted]; and

-9-

MOTION TO COMPEL

- All agreements between one or more of the Inventors and one or more of Acacia, CCE, Nokia Corp., Siemens, and/or NSN related to User Equipment or any of the Patents-in-Suit, any Related Patent, or any Related Application.

### C. Acacia Must Produce All Relevant Acacia License Agreements and Related Documents

It is well established that licensing and settlement agreements can be highly relevant to the issue of reasonable royalties. *See generally, ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) ("Moreover the record already contained evidence of licenses on the claimed technology. Lansa was entitled to rely on that record evidence to show a royalty rate reasonably related to the technology in this litigation."). Thus, Acacia must produce any outstanding license or settlement agreements relating to the Asserted Patents or similar technology. Such documents include:

- All licenses and agreements, including structured term licenses, and proposed agreements offered or entered into for all or substantially all of the patents in a portfolio, or multiple portfolios, irrespective of whether the offers, proposals or agreements involve the Asserted Patents.

- All documents and correspondence related to the licensing, sale, auction, offers to license, or offers to sell the Asserted Patents, or any Related Patent, including without limitation, any claim charts or presentations created, sent, or shown to any potential licensee or purchaser or has received from any potential licensee or purchaser.

- All documents and correspondence relating to any evaluations (financial, technical or otherwise) of the patents-in-suit or similar technologies, including without limitation, communications with investors or potential investors, calculations of return on investment or projected return on investment, charts, studies, projections, estimates, valuations, prospectuses, notes, or meeting minutes related to the licensing, scope, or valuation of the Asserted Patents or similar technologies.

- All documents and correspondence between related to any negotiations, acquisition, joint venture, licensing and/or sale of the Asserted Patents.

One of the disputed issues in this case is the amount of any reasonable royalty for the Asserted Patents. Thus, Acacia's portfolio licenses are relevant, as they may be helpful to compare portfolio licenses that include the Asserted Patents, and those that do not include one or more Asserted Patents. Namely, Acacia typically licenses the patents it controls as a full portfolio, and often licenses multiple portfolios in a single agreement for one payment. But here, consistent with Acacia's practice, it has asserted only a few patents of one of its portfolios, and the licenses covering the Asserted Patents do not specific a particular value of these three patents. Pursuant to the *Georgia-Pacific* factors analysis for a reasonable royalty, in order for AT&T's damages expert to opine on the value of these specific patents, it may be important to compare Acacia licenses including the Asserted Patents with those not including the Asserted Patents as a potential value indicator. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970).

In addition to the license and settlement agreements, documents memorializing licensing and settlement negotiations are discoverable and not privileged:

> Therefore, in light of reason and experience, we hold that settlement negotiations related to reasonable royalties and damage calculations are not protected by a settlement negotiation privilege . . . . Nor has MSTG attempted to show that the district court awarded overly broad discovery into the settlement negotiations, or that denial of discovery of the settlement negotiation documents was necessary here to encourage settlement. Thus, the district court did not clearly abuse its discretion in ordering production of the settlement negotiation documents.

*In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012). The documents memorializing these negotiations are therefore highly probative of how the parties arrived at the license or settlement amount, and to what extent it may be applicable to this case.

-11-

MOTION TO COMPEL

## V. CONCLUSION

For the foregoing reasons, AT&T's Motion to Compel should be granted, and Acacia should be compelled to produce:

- All licenses to the Asserted Patents involving Nokia Corp., Siemens and/or NSN;
- Complete and unredacted copies of the redacted agreements relating to NSN, Nokia Corp., and Siemens;
- ████████████████████████████████████████
- All agreements between one or more of the Inventors and one or more of Acacia, CCE, Nokia Corp., Siemens, and/or NSN related to User Equipment or any of the Patents-in-Suit, any Related Patent, or any Related Application;
- All license or settlement agreements relating to the Asserted Patents or similar technology; and
- All portfolio licenses that include the Asserted Patents, and those that do not include one or more Asserted Patents.

DATED: October 20, 2015  Respectfully submitted,

PAUL HASTINGS LLP

By: /s/ Jeffrey D. Comeau
JEFFREY D. COMEAU
CA SB# 259679
jeffreycomeau@paulhasting.com
PAUL HASTINGS LLP
4747 Executive Drive
Twelfth Floor
San Diego, CA 92121-3114
Telephone: (858) 458-3000
Facsimile: (858) 458-3005

Attorney for Defendant
AT&T MOBILITY LLC