MARC J. SCHNEIDER, SBN 214609
  mschneider@sycr.com
STEPHEN L. RAM, State Bar No. 240769
  sram@sycr.com
JESSICA L. MULLEN, State Bar No. 288845
  jmullen@sycr.com
STRADLING YOCCA CARLSON & RAUTH
660 Newport Center Drive, Suite 1600
Newport Beach, CA  92660-6422
Telephone:  (949) 725-4000
Facsimile:  (949) 725-4100

Attorneys for Third Party
ACACIA RESEARCH CORPORATION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC,<br><br>          Plaintiff,<br><br>        vs.<br><br>HTC CORPORATION, et al.,<br><br>          Respondents | Case No. 15-cv-2373-JAH-MDD<br><br>PENDING IN UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS<br><br>CASE NO. 6:13-CV-00507-KNM (CONSOLIDATED LEAD CASE)<br><br>**THIRD PARTY ACACIA RESEARCH CORPORATION'S OPPOSITION TO AT&T MOBILITY, LLC'S MOTION TO COMPEL** |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

OPPOSITION TO MOTION TO COMPEL (15cv27373)

LITIOC/2126619v8/101022-0120

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF FACTS .......................................................................... 2

      A.   ARC Is The Corporate Parent Of CCE. ........................................ 2

      B.   ARG Acquires A Patent Portfolio From Nokia That Includes
           The Asserted Patents. ..................................................................... 3

      C.   CCE Receives An Assignment Of The Asserted Patents And
           All Contract Rights Of The Purchase Agreement. ......................... 3

III.  PROCEDURAL HISTORY ........................................................................ 4

      A.   CCE Commences A Patent Infringement Action Against
           AT&T. .............................................................................................. 4

      B.   CCE Produces All Relevant, Non-Privileged Documents In Its
           Possession, Custody, And Control Including ARC Documents. ..... 4

      C.   CCE Issues Letters Rogatory To Obtain Nokia's Documents
           Requested By AT&T. ...................................................................... 4

      D.   AT&T Subpoenas ARC Demanding ARC Reproduce The Same
           Documents CCE Produced, Nokia's Documents, And Unrelated
           ARC Agreements And Documents. .................................................. 6

      E.   AT&T Moves To Compel Despite Receiving All Relevant,
           Non-Privileged Documents From CCE. ........................................... 8

IV.   ARGUMENT ............................................................................................ 10

      A.   The Subpoena Imposes An Undue Burden On ARC Because It
           Is Cumulative And Duplicative Of Requests To Plaintiff CCE,
           Seeking The Exact Same Documents CCE Already Produced. ....... 10

           1.   CCE Has Produced All Relevant, Non-Privileged
                Documents. .......................................................................... 10

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

i

OPPOSITION TO MOTION TO COMPEL (15cv27373)

LITIOC/2126619v8/101022-0120

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    2.    Rule 45 Precludes The Type Of "Unreasonably Cumulative Or Duplicative" Discovery The Subpoena Seeks From ARC. ...................................................................... 10

    3.    ARC's Relationship As CCE's Corporate Parent Does Not Alter The Protections Of Rule 45. ..................................... 12

B.    AT&T Can Serve Letters Rogatory To Receive New Or Different Nokia And NSN Documents Because ARC Does Not Have Possession, Custody, Or Control Of Nokia Or NSN's Documents. ........................................................................................ 15

C.    ARC And Its Affiliates' Agreements And Related Documents Covering Other Patents Are Not Relevant To Any Claim Or Defense In The Infringement Action. .................................................. 17

V.    Conclusion ................................................................................................ 21

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-ii-

## TABLE OF AUTHORITIES

Page(s)

CASES

*Adaptix, Inc. v. Alcatel-Lucent USA, Inc., et al.,*
   Nos. 6:12-cv-22, 6:12-cv-122, 6:12-cv-00123
   (E.D. Tex. Aug. 14, 2014) ................................................................. 14

*Afros S.P.A. v. Krauss-Maffei Corp.,*
   113 F.R.D. 127 (D. Del. 1986) ............................................................14

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,*
   300 F.R.D. 406 (C.D. Cal. 2014) ........................................................11

*Bush v. Ruth's Chris Steak House, Inc.,*
   286 F.R.D. 1 (D.D.C. 2012) ...............................................................17

*Cherrone v. Florsheim Dev.,*
   Civ. No. 2:12-02069 WBS CKD, 2012 U.S. Dist. LEXIS 172778
   (E.D. Cal. Dec. 4, 2012) .....................................................................12

*Dataquill Ltd. v. High Tech Computer Corp.,*
   2012 U.S. Dist. LEXIS 53164
   (S.D. Cal. Apr. 16, 2012)............................................................. 18, 20

*Doe v. Unocal Corp.,*
   248 F.3d 915 (9th Cir. 2001) ..............................................................12

*Dole Food Co. v. Patrickson,*
   538 U.S. 468 (2003) ...........................................................................13

*First Aviation Servs. v. Gulf Ins. Co.,*
   205 F.R.D. 63 (D. Conn. 2001) ..........................................................11

*Funai Elec. Co., Ltd. v. Orion Elec. Co., Ltd.,*
   02 Civ. 2605 (AGS), 2002 U.S. Dist. LEXIS 14466
   (S.D.N.Y. Aug. 6, 2002)....................................................... 15, 17, 20

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
   318 F. Supp. 1116
   (S.D.N.Y 1970)..................................................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

i

LITIOC/2126619v8/101022-0120

*Gerritsen v. Warner Bros. Entm't*,
    No. CV 14-03305 MMM, 2015 U.S. Dist. LEXIS 84979
    (C.D. Cal. June 12, 2015) .......................................................... 12, 13

*Golden Bridge Tech. v. Apple Inc.*,
    No. 5:12-cv-04882-PSG, 2014 U.S. Dist. LEXIS 68564
    (N.D. Cal. May 18, 2014)................................................................ 20

*Haworth, Inc. v. Herman Miller, Inc.*,
    998 F.2d 975 (Fed. Cir. 1993) ................................................... 11, 17

*Herman v. Yellow Pages.com, LLC*,
    780 F. Supp. 2d 1028 (S.D. Cal. 2011) ........................................... 12

*In re Plastics Additives Antitrust Litig.*,
    No. 03-2038, 2005 U.S. Dist. LEXIS 47979
    (E.D. Pa. Aug. 9, 2005) ................................................................... 11

*In re Potanina*,
    2015 U.S. Dist. LEXIS 96340
    (S.D.N.Y. June 30, 2015) ................................................................ 16

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
    394 F.3d 1143 (9th Cir. 2004)......................................................... 12

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ........................................................... 18

*NetApp, Inc. v. Nimble Storage, Inc.*,
    No. 5:13-CV-05058-LHK, 2015 U.S. Dist. LEXIS 11406
    (N.D. Cal. Jan. 29, 2015)................................................................. 13

*Nidec Corp. v. Victor Co.*,
    249 F.R.D. 575 (N.D. Cal. 2007) .................................................... 11

*Nucal Foods, Inc. v. Quality Egg LLC*,
    887 F. Supp. 2d 977 (E.D. Cal. 2012)........................................ 13, 14

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010) ......................................................... 19

*Sandoval v. Ali*,
    34 F. Supp. 3d 1031, 1036 (N.D. Cal. 2014) .................................. 12

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-ii-

OPPOSITION TO MOTION TO COMPEL (15cv27373)

LITIOC/2126619v8/101022-0120

*Slottow v. Am. Cas. Co.*,
   10 F.3d 1355 (9th Cir. 1993) ................................................................ 12

*Software Rights Archive, LLC v. Google, Inc.*
   No. 09-CV-017-JJF, 2009 U.S. Dist. LEXIS 43835
   (D. Del. May 21, 2009). ...................................................................... 12

*U.S. v. Bennett*,
   621 F.3d 1131 (9th Cir. 2010) .............................................................. 13

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ...................................................................... 12, 13

*Utah Medical Prods., Inc. v. Graphic Controls Corp.*,
   350 F.3d 1376 (Fed. Cir. 2003) ............................................................ 19

*Veritas Operating Corp. v. Microsoft Corp.*,
   No. 2:06-cv-00703-JCC, 2008 U.S. Dist. LEXIS 35627
   (W.D. Wash. Jan. 17, 2008) ................................................................. 20

*VirnetX, Inc. v. Microsoft Corp.*,
   No. 6:07 CV 80, 2008 U.S. Dist. LEXIS 94854
   (E.D. Tex. June 4, 2008). (Mot. at 7-8.) ............................................... 15

**OTHER AUTHORITIES**

17 C.F.R. § 210.3-01, 02 ......................................................................... 14

Fed. R. Civ. P. 19 ................................................................................... 15

Fed. R. Civ. P. 26 ......................................................................... 10, 17, 15

Fed. R. Civ. P. 34 ................................................................................... 14

Fed. R. Civ. P. 45 ......................................................................... *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-iii-

OPPOSITION TO MOTION TO COMPEL (15cv27373)

LITIOC/2126619v8/101022-0120

## I.      INTRODUCTION

The motion should be denied in its entirety because Movant AT&T Mobility LLC's ("AT&T") subpoena contravenes Rule 45 of the Federal Rules of Civil Procedure and established law.

First, plaintiff Cellular Communications Equipment LLC ("CCE") has all relevant documents in the underlying patent infringement action—all documents pertaining to the actual patents-in-suit, license and other agreements relating to those patents, and all chain of title documents.  In turn, CCE has produced all of those relevant, non-privileged documents to AT&T.  AT&T asserts **no** deficiency in CCE's document productions that would justify requiring CCE's corporate parent, third party Acacia Research Corporation ("ARC"), to undergo a second search, collection, and production of the same, exact documents.  The motion undermines the clear directive of Rule 45 to avoid this precise type of cumulative, duplicative, and burdensome discovery tactic.

Second, CCE and ARC cannot produce Nokia's separate documents that CCE and ARC do not possess or control.  AT&T admits that CCE voluntarily requested and later served letters rogatory to the foreign based Nokia companies.  AT&T also admits that CCE produced all of the documents Nokia provided, including documents that Nokia only provided in redacted format.  AT&T does not explain how any of the information Nokia redacted or any document Nokia withheld bear any relevance to the underlying action.  More importantly, AT&T makes no factual or legal argument to suggest that ARC has any ability to obtain additional documents from Nokia, particularly because AT&T acknowledges that CCE is the actual assignee of all rights under the contract with Nokia.  Contrary to AT&T's rhetoric, ARC and CCE are not playing a "blame game," they simply cannot produce documents that they do not possess or control.  More importantly, AT&T neglects its own ability to issue letters rogatory and seek relief from a court

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-1-

OPPOSITION TO MOTION TO COMPEL (15cv27373)

LITIOC/2126619v8/101022-0120

1   of competent jurisdiction if AT&T remains unsatisfied with Nokia's document

2   production.

3          Lastly, the overwhelming majority of the subpoena's sixty-three (63)

4   requests seek documents that are not reasonably calculated to lead to the discovery

5   of admissible evidence for any claim or defense in the action.  The subpoena seeks

6   license agreements and documents that relate to patents *not* asserted against AT&T

7   in the patent litigation, that bear no relationship to the Nokia patents asserted, and

8   that bear no relationship to the accused products AT&T sells and distributes.

9   AT&T makes no attempt to suggest how any of these other documents could be

10  relevant to its damages contention, when none of these agreements are a license to

11  any asserted patent or any CCE patent, or set any economic value for them.  Thus,

12  they are not relevant to any damages calculation.  Tellingly, the motion avoids

13  reference to any actual document request because the requests' flaws are readily

14  apparent.

15         Accordingly, ARC respectfully requests that the Court deny the motion in its

16  entirety.

17  **II.     STATEMENT OF FACTS**

18         **A.     ARC Is The Corporate Parent Of CCE.**

19         Based in Newport Beach, ARC is a publicly traded corporation listed on the

20  Nasdaq Exchange. (Declaration of Jessica L. Mullen ("Mullen Decl."), Ex. A.)

21  ARC and its family of companies, including its wholly owned subsidiary Acacia

22  Research Group LLC ("ARG"), partner with inventors and other patent holders,

23  ranging from individual inventors and universities to Fortune 500 companies, and

24  license those inventors' patented technologies to companies that are practicing the

25  patents without the inventors' consent.  (*Id.* at 3.)  ARC and ARG are corporate

26  parents of CCE.

27         ARC and its operating subsidiaries own or control the rights to more than

28  one hundred and eighty (180) patent portfolios and have executed over one

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-2-

LITIOC/2126619v8/101022-0120

OPPOSITION TO MOTION TO COMPEL (15cv27373)

thousand four hundred (1,400) license agreements.  (*Id*. at 3, 8-9.)  Those patent portfolios cover diverse technologies used in a wide variety of industries including, for example:  social networking, software, transportation and automotive, medical devices, energy and lighting, internet, ecommerce and business methods, and imagining and diagnostics.  (*Id*. at 8-9.)

**B.     ARG Acquires A Patent Portfolio From Nokia That Includes The Asserted Patents.**

Finish companies Nokia Siemens Networks Oy and Nokia Corporation (collectively, "Nokia") were the original assignees of U.S. Patent Nos. 8,055,820; 7,218,923 and 7,941,174 (collectively, the "Asserted Patents").  (Mullen Decl. Exs. B-D.)  Nokia is the corporate parent of Nokia Siemens Networks B.V., a company incorporated in the Netherlands ("NSN").  (*Id*., Ex. E at 68, F-45, F-82.)

On December 21, 2012, ARG partnered with NSN by an agreement conveying a patent portfolio including the Asserted Patents to ARG (the "Purchase Agreement").  (*Id*., Ex. F.)  The Purchase Agreement expressly contemplates that ARG may assign certain or all of the patents, along with all ARG's rights and obligations under the Purchase Agreement to one of its subsidiaries.  (*Id*. at § 11.2.)

**C.     CCE Receives An Assignment Of The Asserted Patents And All Contract Rights Of The Purchase Agreement.**

On or about January 25, 2013, CCE received an assignment for the '820 and '923 patents, and all of ARG's rights and obligations under the Purchase Agreement pertaining to those patents.  (Mullen Decl., Ex. G & H.)  On or about June 20, 2013, CCE received an assignment for the '174 patent, and all of ARG's rights and obligations under the Purchase Agreement pertaining to that patent.  (*Id*., Ex. I.)  The Asserted Patents and other patents in the portfolio generally relate to methods and systems for improving efficiency in mobile handsets, such as cellular phones and tablets.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-3-

LITIOC/2126619v8/101022-0120

III.   **PROCEDURAL HISTORY**

    A.    **CCE Commences A Patent Infringement Action Against AT&T.**

On June 25, 2013, CCE filed an infringement action on the Asserted Patents against AT&T in the Eastern District of Texas (the "Infringement Action"). [1]  In the Infringement Action, CCE alleges that AT&T infringes the Asserted Patents by, among other things, selling or otherwise redistributing HTC cellphones and tablets.  (Mullen Decl., Ex. J at 4-10.)

ARC and ARG are not parties to the action.  (*See generally id.*)

    B.    **CCE Produces All Relevant, Non-Privileged Documents In Its Possession, Custody, And Control Including ARC Documents.**

CCE received or has access to all ARC (and ARG) documents related to the Asserted Patents, including agreements and licenses.  (Declaration of Edward R. Nelson ("Nelson Decl."), ¶ 2.)  For example, AT&T now acknowledges, "CCE has produced global Acacia patent portfolio licenses" that CCE's counsel was previously uncertain about.  (Mot. at 5.)

However, CCE and ARC are not Nokia or NSN.  As a natural consequence, CCE and ARC did not have access to Nokia or NSN's documents.  This includes unredacted documents relating to the Asserted Patents, such as agreements and licenses involving Nokia, NSN, and Siemens Aktiengesellschaft ("Siemens").

    C.    **CCE Issues Letters Rogatory To Obtain Nokia's Documents Requested By AT&T.**

In an attempt to satisfy AT&T's demands for Nokia and NSN's documents, CCE made numerous requests throughout 2014 that Nokia and/or NSN provide these documents to CCE for production in the Infringement Action.  (Nelson Decl.,

---

[1] *Cellular Communications Equipment LLC v. HTC Corporation, et al.*, Civil Action No. 6:13-cv-507 (E.D. Tex.).  Proceedings with respect to U.S. Patent No. 7,941,174 have been stayed pending resolution of *inter partes* review proceedings. (Mot. at 2, n. 1 (citing Comeau Decl., Ex. 14).)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

¶ 3.)  Ultimately, on July 23, 2014, CCE was informed that Nokia was unwilling to voluntarily release the documents, unless required by formal legal process.  (*Id*.)

Accordingly, on October 1, 2014, CCE filed a Motion for Issuance of Letters Rogatory requesting the production of documents by third-party Nokia ("Letter of Request").  (Nelson Decl., ¶ 4 & Ex. A (attaching Letter of Request).)[2]   The Letter of Request sought thirty-one (31) categories of documents specifically requested by defendants in the Infringement Action, including AT&T.  (*Id*.)  For example, CCE requested all licenses between Nokia (and its affiliates) and twenty-four (24) specific entities regarding the Asserted Patents.[3]  (*Id*., Ex. A, Letter of Request at 4-5 (Request Nos. 1-24).)  In addition, CCE requested complete, unredacted versions of specific agreements relating to NSN, Nokia Corp., and Siemens, including a purported license with Qualcomm Inc.  (*Id*. at 5 (Request Nos. 26-31).)

In response to CCE's Letter of Request, Nokia agreed to produce documents responsive to Request Nos. 1-24 seeking all licenses between Nokia (or its affiliates) and the specified entities but declined to produce documents in response to the "catch-all" Request No. 25 for all licenses with "any other entity."  (Nelson Decl., ¶ 5.)  Nokia also declined to produce the unredacted versions of various agreements involving Nokia, NSN, and/or Siemens in response to Requests Nos. 26-30.  (*Id*.)  Lastly, Nokia declined to produce a purported license agreement with Qualcomm Inc. referenced in Request No. 31.  (*Id*.)

---

[2] The Court in the Infringement Action granted CCE's Motion for Issuance of Letters Rogatory on November 11, 2015. ( Dkt. No. 281.)

[3] CCE specifically requested all licenses between Nokia and the following entities: Alcatel-Lucent S.A., Amazon, Apple Inc., Dell Inc., LM Ericsson Telephone Company, Handspring, Inc., HTC Corporation, Huawei Technologies Co. Ltd., Kyocera Corporation, LG Electronics, Inc., Lenovo Group Ltd., Microsoft Corporation, Mitsubishi Group, Motorola, Inc., NEC and/or NEC Casio and/or NEC Casio Mobile Communications, Ltd. and/or NEC Corporation of America, Option Wireless and/or Option NV, Pantech Co., LTD. and/or Pantech Wireless, Inc., Koninklijke Philips N.V., Qualcomm Inc., Research-in-Motion Limited and/or Research-in-Motion Corporation and/or Blackberry Limited and/or Blackberry Corporation, Samsung Group, Siemens AG, Sierra Wireless, ZTE Corporation and/or ZTE (USA) Inc.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2126619v8/101022-0120

OPPOSITION TO MOTION TO COMPEL (15cv27373)

On or around March 3, 2015, CCE produced to AT&T all documents Nokia provided to CCE pursuant to the Letter of Request.  (Nelson Decl., ¶ 6.)

**D.    AT&T Subpoenas ARC Demanding ARC Reproduce The Same Documents CCE Produced, Nokia's Documents, And Unrelated ARC Agreements And Documents.**

On April 9, 2015, AT&T served ARC with a document subpoena.  The subpoena consisted of sixty-three (63) document requests.  (Mullen Decl., Ex. K.) The subpoena seeks many of the same exact documents that CCE already produced.  (*See*, *e.g*., *id.*, Request No. 52 (seeking all information related to the sale or offer of sale of the Asserted Patents); Request No. 60 (seeking agreements between the inventors and ARC, CCE, Nokia, Siemens, and/or NSN); Request Nos. 61 & 62 (seeking documents relating to the prosecution of the Asserted Patents).  The subpoena also seeks the Nokia and NSN documents that were covered by CCE's Letter of Request and that were produced in the same fashion that CCE received them from Nokia.  (*Compare id.*, Request Nos. 54-58 (seeking agreements between Nokia, Siemens, and NSN) *with* Nelson Decl., Ex. A, Letter of Request, Request Nos. 26-30.)

The majority of the subpoena, however, concerns license agreements and documents unrelated to the Asserted Patents.  Request Nos. 1-50 and 63 make sweeping requests for any type of agreement for all of time—without limitation to the Asserted Patents—between ARC (including its affiliates) and ***one hundred and thirty-six (136) specific companies or "any other entity"*** and all information related to those agreements.  (*Id*., Ex. K at 8-20.)[4]  For example, Request No. 48 is nearly a page-long request that demands:

_____

[4] Request No. 63 is a half-page and demands all information related to any agreement between one or more of the one hundred and thirty-six (136) parties identified in Request Nos. 1-48 and one or more of twenty-six (26) ARC and ARG subsidiaries.  (Mullen Decl., Ex. K at 22.)

-6-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2126619v8/101022-0120

OPPOSITION TO MOTION TO COMPEL (15cv27373)

Information sufficient to show any license or other agreement between Acacia and 3M Co., ADC Telecommunications, ADTRAN, Advanced Telecommunication Modules Ltd, Agilent, Aicent, Altair Semiconductor, Alvarion, Aruitsu, Aptilo Networks, Aradial, Aricent, Ascom, Astellia, AVM, Axerra Networks, Barracuda Networks, Bridgewater Systems, Cirpack, Coiler, COM DEV International, Conexant Systems, Inc., Continuous Computing- Trillium, Coriant, 0-Link, Dialogic Inc., ECI Telecom, Empirix, Fortinet, Genband, Greenpacket, Hytera, Infinera, Ingate Systems, Intracom, IPWireless, Kineto Wireless, Logitech International S.A., MDS America, Mellanox Technologies, Metaswitch, Mindspeed Technologies, Inc. , MikroTik, MindTree Wireless, Mitel, MRV Communications, Mushroom Networks, Neoway Technology, NetHawk, Newkia, neXus, Nomor Research, NXP Semiconductors, Olivetti S.p.A., Overture Networks, Panorama Antennas, picoChip, Polycom, PureWave Networks, Qasara, RAD Group, Radcom Ltd, RadiSys, Radwin Ltd., SAF Tehnika, Seeker Wireless, Sequans Communications, SiRRAN Communications, Skyworks Solutions, Inc., Speedflow Communications, Star Solutions, Starent Networks, Surf Communication Solutions, Tadiran Telecom, Talari Networks Tandberg, Tekelec, Inc., Telco Systems, Telesail Technology, Teligent Telecom, Tektronix, Traffix Systems, Tropper Technologies, Valid8, Vecima Networks, Vitesse Semiconductor, WANSecure Firewall, Wintegra, Zeugma Systems, Zhone Technologies, Zopo Mobile, and/or any Affiliates of the foregoing entities: related to User Equipment, any of the Patentsin- Suit, any Related Patent, or any Related Application; or related to any license or other agreement between Acacia and the foregoing entities related to User Equipment, any of the Patents-in-Suit, any Related Patent, or any Related Application.

(*Id*. at 19-20.)  The subpoena broadly defines the term "User Equipment" to include any "device designed to be used by an end user to communicate with a wireless network, including but not limited to a WiFi network or a cellular network." (*Id*. at 3.)  The definition makes no distinction between personal handheld devices, such as the HTC products at the heart of the Infringement Action, or commercial, enterprise devices.  The definition similarly makes no

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-7-

OPPOSITION TO MOTION TO COMPEL (15cv27373)

LITIOC/2126619v8/101022-0120

1  distinction between readily mobile devices, such as HTC's products, and fixed or

2  stationary devices.

3  In this way, AT&T's requests encompass *every agreement* between ARC

4  and "*any other entity*" that relates to any device that could be potentially *used to*

5  *communicate with WiFi* or a cellular network *and all related information*.  By way

6  of example, the scope of AT&T's requests would include agreements with Fujitsu

7  Ltd. covering Wi-Fi air conditioner controls (Request No. 10), Garmin Ltd.

8  covering marine radar units (Request No. 11), and Harris Corp. concerning

9  battlespace networks and unmanned drones (Request No. 13) and all information

10  related to those agreements (Request No. 50).

11  Without limitation as to time or subject matter, Request No. 51 calls for all

12  information related to any agreement concerning one or more of the one hundred

13  and thirty-six (136) parties identified in Request Nos. 1-48 and Nokia, NSN, or

14  Siemens.  (*Id*. at 20.)  Finally, Request Nos. 52-62 demands ARC to produce

15  documents and communications that relate to the Asserted Patents as well as the

16  inventors and original assignees of the Asserted Patents.  (*Id*. at 20-22.)

### E.   AT&T Moves To Compel Despite Receiving All Relevant, Non-Privileged Documents From CCE.

19  ARC responded to the subpoena on April 23, 2015 and supplemented its

20  responses on May 20, 2015.  (Mullen Decl., Exs. L & M.) [5]  To the extent AT&T's

21  requests sought documents relating to the Asserted Patents, ARC responded that its

22  subsidiary, CCE, received or has access to all responsive documents and that ARC

23  (and ARG) have no additional or unique documents to produce.  (*Id*., Ex. M at 2.)

24  ARC objected that the subpoena made numerous requests for irrelevant,

25  ─────────────
[5] Pursuant to the Docket Control Order entered in the Infringement Action on April 15, 2014, full fact discovery opened forty-five (45) days after the first Markman Order which was issued on March 9, 2015. (Dkt. Ctrl. Order at 5; Dkt. No. 363.) ARC objected that AT&T's April 9, 2015 subpoena was premature because full fact discovery opened on April 23, 2015.  Therefore, ARC timely served objections on April 23, 2015 to preserve its rights and served supplemental responses on May 20, 2015, after the opening of full fact discovery.  (*See* Mullen Decl., Ex. L.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2126619v8/101022-0120

-8-

OPPOSITION TO MOTION TO COMPEL (15cv27373)

1   confidential information regarding ARC and its affiliates' agreements with third

2   parties which do not relate to the Asserted Patents.  (*Id.*, Exs. L at 1; M at 1.)

3        On June 11, 2015, counsel for ARC and AT&T had a meet and confer call

4   whereby ARC explained its position that all potentially relevant documents had

5   been provided or made available to CCE.  With respect to AT&T's demands for

6   ARC or its affiliates' unrelated agreements, ARC explained its position that such

7   requests were an improper attempt to delve into other areas of ARC's multifaceted

8   business that have nothing to do with the Asserted Patents, the Infringement

9   Litigation, or CCE.  (Mullen Decl. ¶ 19.)  ARC invited AT&T to make a showing

10  of relevance or narrow the scope of the subpoena.  (*Id.* & Ex. N at 3.)

11       Three months later, on September 25, 2015, counsel for AT&T called "to get

12  back in touch about the subpoena."  (*Id.* ¶ 20.)  During a meet and confer call on

13  October 8, 2015 as well as in subsequent correspondence, counsel for ARC

14  continued to explain that CCE has all documents relating to the Asserted Patents

15  and that ARC has no additional documents to produce.  (*Id.* ¶ 21 & Ex. N at 1-2.)

16  Again, counsel for ARC, during the call as well as in subsequent correspondence,

17  invited AT&T to provide case law supporting its position that such documents are

18  relevant and discoverable.  (*Id.* ¶ 21 & Ex. N at 3.)

19       On October 20, 2015, AT&T filed the present motion.[6]

---

[6] Although counsel for AT&T has offices in Costa Mesa, California neighboring ARC's headquarters in Newport Beach, the subpoena inexplicitly demanded compliance in the Southern District of California thereby requiring motion practice in this Court.  (Mullen Decl., Ex. Q.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2126619v8/101022-0120

-9-

IV.   **ARGUMENT**

    A.   **The Subpoena Imposes An Undue Burden On ARC Because It Is Cumulative And Duplicative Of Requests To Plaintiff CCE, Seeking The Exact Same Documents CCE Already Produced.**

        1.   **CCE Has Produced All Relevant, Non-Privileged Documents.**

ARC has already ensured that CCE has equal access to all potentially relevant ARC documents concerning the Asserted Patents, license or other agreements relating to the Asserted Patents, and the Purchase Agreement and assignment agreements covering the Asserted Patents.  CCE has produced all relevant, non-privileged documents including license agreements in ARC, ARG and CCE's possession, custody, and control.  (Nelson Decl. ¶ 2.)

In its motion, AT&T seeks those same documents that CCE has already produced, including documents CCE obtained from Nokia.  (Mot. at 9-10.)  For example, AT&T admits that "CCE has produced global Acacia patent portfolio licenses with Microsoft, Samsung, Oracle, Cisco, and Hynix."  (Mot. at 5 (citing Comeau Decl., Exs. 24-28).)  Yet, AT&T still demands that ARC re-produce those same portfolio license agreements here.  (Mot. at 10, 12.)  The subpoena and now motion's demand for ARC to search, collect, review, and produce the exact same documents is contrary to Rule 45.

        2.   **Rule 45 Precludes The Type Of "Unreasonably Cumulative Or Duplicative" Discovery The Subpoena Seeks From ARC.**

AT&T's demands that ARC to search and produce the same documents as CCE is "unreasonably cumulative or duplicative" because these documents can [and have been] obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C); *see also* Fed. R. Civ. P. 45(d).  Courts have refused to compel third parties to produce documents available to party opponents in similar circumstances.

The decision in *In re Plastics Additives Antitrust Litig.* ("*Plastics*"), No. 03-2038, 2005 U.S. Dist. LEXIS 47979 (E.D. Pa. Aug. 9, 2005), is particularly instructive.  In *Plastics*, the court quashed a subpoena, finding that the subpoena was "unduly burdensome because . . . the desired documentation [was] obtainable from a more convenient source—the class plaintiffs."  2005 U.S. Dist. LEXIS 47979, at *12 (citing Fed. R. Civ. P. 26(b)(2)).  The court further held that "because plaintiffs . . . possess all documents requested pursuant to the subpoena, it is more convenient and less burdensome to seek such documentation from plaintiffs than from [the third-party]."  *Id*. at *13.[7]  *See also*, *e.g.*, *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 977-78 (Fed. Cir. 1993) (requiring party to seek discovery from party opponent before commencing ancillary proceeding against nonparty to obtain documents); *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 576-77 (N.D. Cal. 2007) (granting motion to quash third-party subpoena where "the vast majority of the discovery sought . . . is discovery obtainable from a source more direct, convenient and less burdensome – namely, from Defendants"); *First Aviation Servs. v. Gulf Ins. Co.*, 205 F.R.D. 63, 69 (D. Conn. 2001) (denying motion to compel production of documents from third-party because defendant possesses documents sought by plaintiff).

AT&T provides no legal or practical basis to have ARC search, collect, and produce the same documents.  AT&T has not suggested any deficiency in CCE's document productions or that ARC (or ARG) have any unique or different documents concerning the Asserted Patents.  In *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406 (C.D. Cal. 2014), the court quashed defendant's subpoena to a non-party after, among other things, determining that the defendant failed to show that the same information was not obtainable from party witnesses.  300 F.R.D. 406, 412, n.6.  Similarly, in response

---

[7] *Plastics* was later vacated on other grounds.

OPPOSITION TO MOTION TO COMPEL (15cv27373)

LITIOC/2126619v8/101022-0120

to a motion to compel production of documents by a third-party, the court in *Software Rights Archive, LLC v. Google, Inc.* determined that "there is reason to believe that Respondents each have unique documents." No. 09-CV-017-JJF, 2009 U.S. Dist. LEXIS 43835, at *9 (D. Del. May 21, 2009). AT&T has not contended, let alone demonstrated, that CCE and ARC have unique documents pertaining to the Asserted Patents. Indeed, the court in *Software Rights* supports ARC's position that "where, for example . . . a party seeks a specific document from both a non-party and an opposing party that is nonetheless *surely* in the hands of the opposing party, there is far less need to burden the non-party, *if at all*." *Id.* at *8-9 (emphasis added).

AT&T has not provided any basis for receiving a second copy of the same documents that justifies the time, expense, and burden on ARC.

### 3. ARC's Relationship As CCE's Corporate Parent Does Not Alter The Protections Of Rule 45.

Without any citation to any evidence, AT&T baldly asserts that "CCE is the alter ego of Acacia" (Mot. at 7) and AT&T refers to CCE as a "shell" company (Mot. at 1), and on that basis, ARC "should stand in CCE's shoes for the purposes of discovery obligations" (Mot. at 8.) AT&T's rhetoric is unfounded. Establishing separate corporate subsidiaries to hold particular assets or operate particular businesses is commonplace. *See, e.g. United States v. Bestfoods*, 524 U.S. 51, 52 (1998) (using subsidiaries to conduct business in the hazardous waste industry).[8]

---

[8] *See also, e.g., Doe v. Unocal Corp.*, 248 F.3d 915, 920 (9th Cir. 2001) (using subsidiaries to conduct business in the energy industry); *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1147 (9th Cir. 2004) (using subsidiary to conduct business in the carpentry industry); *Slottow v. Am. Cas. Co.*, 10 F.3d 1355, 1360 (9th Cir. 1993) (using subsidiary to conduct business in the banking industry); *Herman v. Yellow Pages.com, LLC*, 780 F. Supp. 2d 1028, 1030 (S.D. Cal. 2011) (using subsidiary to conduct business in the telecommunications industry); *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1036 (N.D. Cal. 2014) (using subsidiaries to conduct business in the automotive industry); *Gerritsen v. Warner Bros. Entm't*, No. CV 14-03305 MMM (CWx), 2015 U.S. Dist. LEXIS 84979, at *75 (C.D. Cal. June 12, 2015) (using subsidiaries to conduct business in the entertainment industry); *Cherrone v. Florsheim Dev.*, Civ. No. 2:12-02069 WBS CKD, 2012 U.S. Dist. LEXIS 172778, at *11 (E.D. Cal. Dec. 4, 2012) (using

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2126619v8/101022-0120

OPPOSITION TO MOTION TO COMPEL (15cv27373)

Indeed, AT&T, Inc. publicly admits that it "is a holding company" and it uses subsidiaries for various operations, including moving party AT&T Mobility LLC. (Mullen Decl., Ex. O at 1-2.)

ARC is not hiding anything.  ARC acknowledges that it is the ultimate parent company of CCE, and that CCE and ARC share interlocking officers and directors.  It is entirely appropriate and expected for a parent company's officers and directors to serve as officers and directors of its subsidiary.  *Bestfoods,* 524 U.S. at 69 (finding it is "normal" for a parent and a subsidiary to have identical officers) (citation omitted); *see*, *e.g.*, *Gerritsen v. Warner Bros. Entertainment,* No. CV 14-03305 MMM, 2015 U.S. Dist. LEXIS 84979, at *76 (C.D. Cal. June 12, 2015) ("Overlap between a parent's and a subsidiary's directors or executive leadership alone, however, is not suggestive of a unity of interest"); *NetApp, Inc. v. Nimble Storage, Inc.*,  Case No. 5:13-CV-05058-LHK, 2015 U.S. Dist. LEXIS 11406, at *21-22 (N.D. Cal. Jan. 29, 2015) (same).

Without any evidence or authority again, AT&T also states that "Acacia is positioned to be the direct beneficiary of any award in this case."  (Mot. at 9.) AT&T never clarifies how it defines "Acacia" (as ARC, its subsidiary ARG that originally acquired the Asserted Patents, or some other grouping).  In any event, ARC (and ARG) as a corporate parent is ***not*** a direct beneficiary of any award – CCE is.  Under black letter corporate law, "[a] corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003); *U.S. v. Bennett*, 621 F.3d 1131, 1136 (9th Cir. 2010) ("Today, it almost goes without saying that a parent corporation does not own the assets of its wholly-

___

subsidiary to conduct business in the real estate industry); *Nucal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 992-95 (E.D. Cal. 2012) (using subsidiary to conduct business in the food industry).

-13-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2126619v8/101022-0120

1    owned subsidiary by virtue of that relationship alone.").  In other words, ARC (and

2    ARG) is not a direct beneficiary.[9]

3         More importantly, ARC's position as a parent company does not diminish

4    Rule 45 protections.  A recent decision from the Eastern District of Texas

5    concerning a similar subpoena to ARG is instructive.  *Adaptix, Inc. v. Alcatel-*

6    *Lucent USA, Inc., et al.*, Nos. 6:12-cv-22, 6:12-cv-122, 6:12-cv-00123 (E.D. Tex.

7    Aug. 14, 2014) (Mullen Decl., Ex. P.)  There, an infringement defendant issued a

8    subpoena to ARG to produce the same documents that the plaintiff (Adaptix),

9    ARG's wholly owned subsidiary, had already produced in the underlying

10   litigation.  The court denied a motion to compel affording ARG the protections of

11   Rule 45.

12        AT&T's cited cases suggest no different result because those cases are

13   inapposite.  Those cases involve the exercise of the court's authority over a *party-*

14   *litigant* to produce documents under the *joint control* of a party-litigant and a third

15   party under Federal Rule of Civil Procedure 34(a).  (*See* Mot. at 8-9 (citing *Bush v.*

16   *Ruth's Chris Steak House, Inc*., 286 F.R.D. 1, 5 (D.D.C. 2012) (finding that

17   defendants possessed the same documents as third party vendor Kenexa; "Federal

18   Rule of Civil Procedure 34(a) allows a party to request the production of

19   documents and electronically stored information from an adversary if the sought

20   items are in the adversary's 'possession, custody, or control.'"); *Afros S.P.A. v.*

21   *Krauss-Maffei Corp*., 113 F.R.D. 127, 129 (D. Del. 1986) (compelling party to

22   produce its corporate parent's documents; "If a party has control over or shares

23   control of documents with a third person, then a court can order production by

24   _____

25   [9] ARC, as publicly held company, does report the financial results of its
     subsidiaries on a consolidated basis as required by SEC rules. 17 C.F.R. § 210.3A-
26   02; *see also* 17 C.F.R. § 210.3-01, 02; *Nucal Foods, Inc. v. Quality Egg LLC*, 887
     F. Supp. 2d 977, 992-95 (E.D. Cal. 2012).  That public reporting does not alter
27   corporate law or the relationship between ARC and its subsidiaries.  Indeed,
     AT&T, Inc. is subject to these same rules and reports consolidated financial results
28   for its subsidiaries, including moving party AT&T Mobility LLC.  (Mullen Decl.,
     Ex. O at 39-43, 44 (Note 1).)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2126619v8/101022-0120

-14-

OPPOSITION TO MOTION TO COMPEL (15cv27373)

1    means of its power over the party; litigant."). Here, CCE has already produced

2    documents that were under joint control with ARC.

3         AT&T also mistakenly relies on *VirnetX, Inc. v. Microsoft Corp.*, No. 6:07

4    CV 80, 2008 U.S. Dist. LEXIS 94854 (E.D. Tex. June 4, 2008). (Mot. at 7-8.)

5    That case does not construe any discovery request or order the production of any

6    document. Instead, in *VirnetX*, the court found that the plaintiff lacked standing

7    and joined SAIC as a necessary party under Rule 19. 2008 U.S. Dist. LEXIS

8    94854, at *18-20. In so doing, the court analyzed SAIC's "substantial rights"

9    retained in the patents-in-suit, including a direct economic interest in the patents.

10   *Id.* at *11-20. Because SAIC was made a party to the action, the court could "no

11   longer afford SAIC the non-party discovery protections of Federal Rule of Civil

12   Procedure 45" and SAIC was instead was subject to Rule 26. *Id.* at *21. Again,

13   ARC and ARG are not parties to the Infringement Action and have no direct

14   interest in the Asserted Patents, which were assigned to CCE.

15   **B.    AT&T Can Serve Letters Rogatory To Receive New Or Different**

16   **Nokia And NSN Documents Because ARC Does Not Have**

17   **Possession, Custody, Or Control Of Nokia Or NSN's Documents.**

18        AT&T's already admits that CCE voluntarily requested and later served a

19   Letter of Request for Nokia and NSN to produce the very documents AT&T seeks.

20   Unsatisfied with Nokia and NSN's production of relevant documents, AT&T

21   demands that ARC should be ordered to obtain and produce the ***exact same***

22   categories of documents contained in CCE's Letter of Request to Nokia.

23   (*Compare* Mot. at 9-10 *with* Nelson Decl., Ex. A, Letter of Request at 3-5.)

24   However, as a preliminary matter, such duplicative and cumulative requests are

25   improper under Rule 45.

26        More fundamentally, AT&T does not (and cannot) demonstrate that ARC

27   has possession, custody, or control over a separate, foreign companies' documents.

28   *See Funai Elec. Co., Ltd. v. Orion Elec. Co., Ltd.*, 02 Civ. 2605 (AGS), 2002 U.S.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-15-

OPPOSITION TO MOTION TO COMPEL (15cv27373)

LITIOC/2126619v8/101022-0120

1  Dist. LEXIS 14466, at * 41 (S.D.N.Y. Aug. 6, 2002) (denying motion to compel

2  production of documents in the possession of Orion's third party manufacturers

3  where "just because these entities manufacture Orion products does not mean that

4  Orion has access to their documents.").  AT&T does not demonstrate any facts to

5  show that any of the Nokia or NSN documents are jointly controlled by ARC,

6  unlike AT&T's cited authority.  (Mot. at 8-9 (citing *Afros*, 113 F.R.D. at 129)).

7       Moreover, AT&T acknowledges that ARC is not even a party to the

8  Purchase Agreement.  (Mot. at 2, n. 2; Mullen Decl., Ex. F.)  At most, ARC is an

9  "Affiliate," but assuming in *arguendo* that ARC was an actual party to the

10  agreement, ARC has no greater rights than those CCE already exercised.  AT&T

11  admits that under the Purchase Agreement, "Acacia negotiated and received the

12  right to NSN/Nokia documents related to the Asserted Patents, and assigned the

13  same right to CCE."  (Mot. at 9 (citing Comeau Decl. Exs. 6-7); *see also* Mullen

14  Decl., Exs. G at 1; H at 1; I at 1 (stating that ARG assigned CCE "its entire rights,

15  obligations, interests and liabilities" in the Purchase Agreement with respect to the

16  Asserted Patents).)  That assignment transferred all of ARG's rights, title, and

17  interest in the Purchase Agreement to CCE.  (Mot. at 3.)  AT&T admits that CCE

18  made a voluntary request under the auspices of the Purchase Agreement, and

19  Nokia and NSN refused.  (Mot. at 4.)   Due to that refusal, CCE used legal process

20  through the Letter of Request.  AT&T advances no argument that ARC has any

21  additional right than ARG or CCE do that would somehow contractually obligate

22  Nokia and NSN to provide their requested documents that Nokia and NSN

23  maintain are irrelevant.  *See In re Potanina*, 2015 U.S. Dist. LEXIS 96340, at *7-8

24  (S.D.N.Y. June 30, 2015) (denying motion to compel third party officer who

25  requested the documents from company, but the company refused; "Interros'

26  official refusal to provide Aliev the requested documents suggests that there is

27  little else the Court can ask of Mr. Aliev.  While Mr. Aliev could opt to pursue

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-16-

OPPOSITION TO MOTION TO COMPEL (15cv27373)

LITIOC/2126619v8/101022-0120

1   legal action against the company, the Court cannot mandate it.  Such an order

2   would place an undue burden on Aliev as a third party").

3        If AT&T is not satisfied with Nokia or NSN's response to the Letter of

4   Request, AT&T has the same compulsory process to seek such documents, *i.e.*,

5   letters rogatory.  As AT&T own cited case recognizes, "[a] party upon whom a

6   discovery demand is served need not seek such documents from third parties if

7   compulsory process against the third parties is available to the party seeking the

8   documents."  *Bush*, 286 F.R.D. at 5 (quoting *Nosal v. Granite Park LLC,* 269

9   F.R.D. 284, 290 (S.D.N.Y. 2010)).  In fact, other defendants in the Infringement

10  Action have done just that.  (*E.g.*, Dkt. Nos. 458-460 (Apple Inc.'s Motions for

11  Issuance of Letters Rogatory).)  As a party to the Infringement Action, AT&T

12  offers no reason why it has not sought to issue its own letters rogatory.  (*See* Mot.

13  *passim*.)  If Nokia or NSN refuse to produce any item or redact any item (as in

14  response to CCE's Letter of Request), AT&T has the same resources available to

15  compel compliance with the letters rogatory in the appropriate foreign court of

16  competent jurisdiction.

17        **C.     ARC And Its Affiliates' Agreements And Related Documents**

18                 **Covering Other Patents Are Not Relevant To Any Claim Or**

19                 **Defense In The Infringement Action.**

20        AT&T is only entitled to documents and information that are reasonably

21  calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P.

22  26(b)(1).  Relevance requires more than a theory that information *might* be relevant

23  to a claim or defense.  *See*, *e.g*, *HaworthInc. v. Herman Miller Inc*., 998 F.2d 975,

24  978 (Fed. Cir. 1993).  In patent cases, matters outside the scope of the patent-in-

25  suit are not relevant to claims of infringement.  *See Funai Elec*., 2002 U.S. Dist.

26  LEXIS 14466, at *22, 27 (denying motion to compel documents relating to

27  products not accused of infringement).

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2126619v8/101022-0120

-17-

OPPOSITION TO MOTION TO COMPEL (15cv27373)

1    Here, the multitude of patents that AT&T demands would neither support

2    nor detract from CCE's contentions—they are unrelated and irrelevant.  Request

3    Nos. 1-50, and 63 request any agreement for all of time—without limitation to the

4    Asserted Patents—between ARC (including its affiliates) and one hundred and

5    thirty-six (136) separate companies and "any other entity" and all information

6    related to those agreements.  (Mullen Decl., Ex. K.)  Again, CCE has produced all

7    documents (including agreements) pertaining to the actual Asserted Patents.  All

8    that leaves are ARC documents pertaining to *other* patents under separate

9    agreements many of which predate ARG and CCE's acquisition of the Asserted

10   Patents.  These documents are simply irrelevant.

11   AT&T argues that "licensing and settlement agreements can be highly

12   relevant to the issue of reasonable royalties."  (Mot. at 10.)  ARC does not dispute

13   this point.  However, AT&T's argument ignores the critical fact that licensing and

14   settlement agreements must relate to the patents-in-suit to be potentially relevant to

15   calculation of royalties.

16   Licenses for technology that is not comparable to the patents-in-suit are not

17   relevant to a reasonable royalty analysis.  *See, e.g., Dataquill Ltd. v. High Tech*

18   *Computer Corp.,* 2012 U.S. Dist. LEXIS 53164, at *11, 14-15 (S.D. Cal. Apr. 16,

19   2012) (excluding expert testimony where plaintiff failed to provide "any

20   discernable link" from which a jury could find that the licensed product was

21   technologically comparable to the technology at issue; "licenses relied on by the

22   patentee in proving damages [must be] sufficiently comparable to the hypothetical

23   license at issue in suit.") (quoting *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d

24   1301, 1325 (Fed. Cir. 2009) (overturning jury award where patent owner relied in

25   part on the testimony of its expert, who in turn relied on eight licenses involving

26   *other* patents)); *LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 79

27   (Fed. Cir. 2012) ("When relying on licenses to prove a reasonable royalty, alleging

28   a loose or vague comparability between different technologies or licenses does not

suffice."); *Utah Medical Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1385 (Fed. Cir. 2003) (affirming district court's conclusion that accused infringer "had not shown that the license agreements used in its expert's analysis were in any way comparable" to the patent-in-suit).

AT&T owned cited authority demonstrates that AT&T's requests are overbroad. The central premise underlying for a reasonable royalty analysis under *Georgia-Pacific* is a hypothetical negotiation occurring between a willing licensor and licensee for the patent at issue. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120-21 (S.D.N.Y 1970); (Mot. at 11.). The *Georgia-Pacific* factors specifically reference royalties received for *licensing* the patents-in-suit and the defined consideration the licensee pays for the use of other *analogous* patents. 318 F. Supp. at 1119-20. Although the court did indicate that the rates paid by a licensee is one factor that could be relevant to a reasonable royalty analysis, it stated that those rates were only relevant if the patents licensed were sufficiently "comparable to the patent in suit." *Id*. at 1120.

Likewise, *ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860, 870 (Fed. Cir. 2010) makes clear that evidence of royalty rates from licenses without a relationship to the claimed invention cannot form the basis of a reasonable royalty calculation. (*See* Mot. at 10.) *ResQNet* expressly discredited license agreements relied on by an expert because none of the "licenses even mentioned the patents in suit or showed any other discernible link to the claimed technology." 594 F.3d at 870. The Federal Circuit rejected the expert's testimony, holding that the district court "must consider licenses that are commensurate with what the defendant has appropriated." *Id*. at 872.

Here, AT&T seeks all license agreements and other documents concerning any "User Equipment." AT&T, however, makes no attempt to explain how agreements concerning *unrelated patents* that might be end user equipment is reasonably calculated to lead to the discovery of admissible evidence. AT&T

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2126619v8/101022-0120

OPPOSITION TO MOTION TO COMPEL (15cv27373)

1    offers no discussion or explanation how these other technologies are comparable or

2    analogous to the patents-in-suit.  *See, e.g., Funai Elec.*, 2002 U.S. Dist. LEXIS

3    14466, at *27-28 (denying motion to compel "licenses unrelated to the Patents-in-

4    Suit"); *Golden Bridge Tech. v. Apple Inc.*, No. 5:12-cv-04882-PSG, 2014 U.S.

5    Dist. LEXIS 68564, at *19-20 (N.D. Cal. May 18, 2014) (parties may not rely on

6    licenses that have no relationship to the claimed invention or are not commensurate

7    with the accused products).

8            Moreover, AT&T's requests include both licensed and unlicensed patents,

9    despite the fact that only actually-licensed analogous patents are even arguably

10   relevant to damages.  *See Veritas Operating Corp. v. Microsoft Corp.*, No. 2:06-

11   cv-00703-JCC, 2008 U.S. Dist. LEXIS 35627, at *76 (W.D. Wash. Jan. 17, 2008)

12   (holding that claim for damages based on "an unvalued license to an unrelated

13   patent is not a 'computation' of damages"); *see also Dataquill Ltd.*, 2012 U.S.

14   Dist. LEXIS 53164, at *21 (barring expert from relying on agreement with Google

15   because it was a technology revenue-sharing agreement, not a patent license; "The

16   agreement is not a license agreement for a patent or patents. . . Therefore, it is not

17   evidence of a royalty rate for the use of the invention or analogous inventions.")

18           AT&T's demands unduly expand the scope of discovery to matters that

19   relate to irrelevant aspects of ARC's broader business.  ARC and its operating

20   subsidiaries have acquired and control patents in a wide variety of industries,

21   including industries unrelated to the type of technology (HTC's wireless

22   cellphones and tablets) at issue in this case.  (*See* Mullen Decl., Ex. A at 8-9.)

23   Allowing AT&T to seek discovery of an agreement unrelated to any of the

24   Asserted Patents, unrelated to CCE, and covering technology different than that at

25   issue in the Infringement Action would sanction a fishing expedition into ARC's

26   and other third parties' highly confidential and commercial sensitive business

27   information.

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-20-

OPPOSITION TO MOTION TO COMPEL (15cv27373)

LITIOC/2126619v8/101022-0120

1

**V.     CONCLUSION**

2          For the foregoing reasons, ARC respectfully requests that this Court deny

3   the motion in its entirety.

4

5   DATED:  December 7, 2015          STRADLING YOCCA CARLSON &
                                      RAUTH, P.C.

6

7                                     By:   s/ Jessica L. Mullen
                                            Marc J. Schneider
8                                           Stephen L. Ram
                                            Jessica L. Mullen
9                                           Attorneys for Third Party
                                            ACACIA RESEARCH
10                                          CORPORATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-21-

OPPOSITION TO MOTION TO COMPEL (15cv27373)

LITIOC/2126619v8/101022-0120